THE UNIVERSITY CLUB *vs.* THE NATIONAL SHAWMUT BANK OF BOSTON.

Suffolk. October 6, 1964. — December 3, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Contract,* Construction, Trust indenture. *Trust,* Construction.

Where a trust indenture securing bonds provided that when the principal of the bonds became payable the obligor could deposit with the trustee "for the account of" the bondholders a sum sufficient to pay the whole amount of principal and unpaid interest, that the trustee should apply the deposit to the payment thereof, that no interest was payable to the bondholders or to the obligor on the deposit, that any portion of the deposit remaining unclaimed by bondholders for eight years "after said

date on which the principal shall have become payable" should be repaid by the trustee to the obligor, and that thereafter the bondholders should be entitled to look only to the obligor for payment and only "to the extent of" the amount repaid to the obligor, and it appeared that the bonds at maturity were in default as to principal and interest and that no payments of either were made until a time several years later when the obligor deposited with the trustee sufficient cash to pay all the outstanding indebtedness, it was held that the period of eight years during which the trustee was entitled to withhold from the obligor any portion of the deposit unclaimed by bondholders ran from the date of the deposit rather than the maturity date of the bonds. [158]

Where a trust indenture securing bonds provided that the obligor would "compensate, reimburse, indemnify . . . the Trustee . . . for and against" "the reasonable compensation . . . of the Trustee and of all persons who may, with reasonable justification, be consulted or employed by or act for the Trustee," the trustee was entitled under such terms of the indenture to reimbursement by the obligor for counsel fees and costs incurred by the trustee in a suit in equity against it by the obligor for a declaratory decree interpreting certain provisions of the indenture, and was not confined to a discretionary allowance by the court under G. L. c. 261, § 13. [158–159]

BILL IN EQUITY filed in the Superior Court on June 12, 1963.

The suit was heard by *Sgarzi, J.*

*Donal O'Callaghan* for the plaintiff.

*Stephen A. Moore* for the defendant.

WILKINS, C.J.   Under date of January 1, 1936, the plaintiff club, a nonprofit corporation organized under G. L. c. 180, issued bonds secured by a second mortgage indenture under which the defendant bank agreed to act as trustee.   A controversy having arisen as to the date upon which the club becomes entitled to the repayment of funds it paid to the bank, the club brings this bill for a declaratory decree under G. L. c. 231A.   Certain bondholders who had not redeemed their bonds were at one time defendants, but the bill has been taken for confessed against them.   The case was heard on a statement of agreed facts.   A final decree adjudged that the date of payment should be August 3, 1970, as contended by the bank, and not January 1, 1964, as urged by the club.   A prayer of the bank that it be awarded counsel fees and costs was not acted upon in the final decree and was in effect denied.   The club appealed from the final decree.   The bank appealed from the denial of its prayer.

The bonds matured on January 1, 1956. They were then in default as to principal and interest, and no payments of either were made until August 3, 1962, when the club deposited with the bank certain of the bonds and sufficient cash to pay all the outstanding indebtedness. At that time the bank discharged the mortgage, and pursuant to the indenture notified all bondholders that funds were available. The bank now holds approximately $35,000 unclaimed by bondholders. On April 29, 1963, the club requested the bank to deliver to it all unclaimed funds on January 1, 1964. The bank advised the club that it would not do so until August 3, 1970.

The question for determination is whether under the last paragraph of section 2 of Article 11 of the indenture the bank should have turned over to the club the sums now held by it on January 1, 1964, which was eight years from January 1, 1956, the due date named in the indenture, or should hold them until August 3, 1970, which is eight years after the date when the club paid the funds to the bank.

Article 11 is entitled "Defeasance." It consists of two sections. Section 1 has three subclauses. Section 2 consists of two unnumbered paragraphs. The controversy germinates in the words in supplied italics in the second paragraph of section 2 of Article 11 here quoted: "After compliance with the provisions of section 1 of this Article, no interest shall accrue on any Bonds . . . on and after the date on which the principal of the Bonds shall have become payable as provided in subclause (2) of section 1 of this Article, and the registered owners of such Bonds shall look . . . for . . . payment . . . only to the sum so deposited with the Trustee, and in no event to the Club; *provided, however,* that any moneys so deposited with the Trustee, and any moneys . . . held by the Trustee as the redemption price of Bonds called for redemption under section 2 of Article 9 hereof, remaining unclaimed by Bondholders for *eight (8) years after said date on which the principal shall have become payable* [italics supplied], shall be repaid by the Trustee to the Club, and thereafter Bondholders shall

be entitled to look only to the Club for the payment of their Bonds and then only to the extent of the amount so repaid, and the Club shall not be liable for any interest on such amount and shall not be regarded as a trustee of such money.''

The interpretation to be placed upon ''eight (8) years after said date on which the principal shall have become payable'' must be determined after a consideration of other relevant portions of Article 11. These we now quote: ''Section 1. This Indenture shall become void: . . . (2) . . . if, when the principal of all Bonds at the time outstanding shall have become payable, or shall be payable within ninety (90) days, whether by their terms, by call for redemption, by declaration or otherwise, the Club shall . . . pay . . . the whole amount of the principal and unpaid interest . . . due on all of the Bonds then outstanding, with interest on any overdue principal and interest . . . or shall deposit . . . with the Trustee . . . for the account of the registered owners of such Bonds, a sum sufficient . . . to pay the whole amount of such principal, unpaid interest and interest on overdue payments . . . .

''Section 2. The moneys deposited with and held by the Trustee as provided in subclause (2) of section 1 of this Article shall be held by the Trustee . . . for the account of the registered owners of the Bonds in respect of which such deposit shall have been made, and shall be applied by the Trustee to the payment of the principal and unpaid interest . . . due on such Bonds, when presented and surrendered . . . at the principal office of the Trustee, but the Trustee shall in no event be liable beyond the amount received. Neither the Trustee nor the Club shall be required to pay interest to any Bondholder, and the Trustee shall not be required to pay any interest to the Club, on any moneys so deposited with the Trustee.''

One most obvious effect of adopting the club's position would be to allow a much briefer time, shorter by more than six and one-half years, during which the claims of nonredeeming bondholders would be secured by the funds held by

the trustee, and after which they would be remitted to an unsecured right of action against the club. The club's brief intimates that the purpose of the disputed portion of the indenture, as well as the intent of the trustee in participating in the drafting, "was to bring an end to its [the trustee's] eventual liabilities within some measureable period of time." Since the bank as trustee would not have to pay interest either to bondholders or the club there is apparent no great burden which the bank would have been eager to avoid. It is not strange, therefore, that the bank does not join in the club's argument which in essence is that this portion of the indenture was for the bank's benefit. It is usual to expect a mortgage for bondholders to be drawn for their benefit and the longer the period for redemption the better their position.

Under section 1, subclause 2, the club could either pay off the bonds itself or it could deposit a sum for that purpose with the trustee. The club chose to do the latter. The present question has arisen, and could arise only, with moneys deposited with the trustee. The second paragraph of section 2 has to do only with that situation. The fundamental cause of the problem is undoubtedly due to the fact that Article 11 was not drawn with a view to its operation after a period of default. This can be tested by supposing that instead of August 3, 1962, the club placed the trustee in funds on January 1, 1964. In that event, under the club's interpretation, the eight year period would have no time for operation if the period should be computed from January 1, 1956. We think that the drafters of the indenture did not intend their words to be given a meaning which conceivably might produce such a result. The words "shall have become payable" in the disputed part of the indenture refer to the date when the bonds are actually capable of being paid.

There was no error in the ruling that the trustee shall hold the funds until August 3, 1970.

A minor issue is presented by the bank's prayer for counsel fees and costs. As the judge does not refer to the mat-

ter at all, we have no way of knowing the reason for the course he took.   The club's brief points out that under G. L. (Ter. Ed.) c. 261, § 13, "the costs shall be wholly in the discretion of the court."   The bank, however, is not forced to rely on that statute where there are applicable provisions in the trust indenture itself.   Article 3, section 5, reads: "The Club will from time to time at the request of the Trustee compensate, reimburse, indemnify, put in funds and save harmless the Trustee, to the reasonable satisfaction of the Trustee from time to time, for and against all the Trustee's Prior Charges."   In Article 12, section 3, dealing with "Definitions," it is said: "the words 'Trustee's Prior Charges' mean the reasonable compensation . . . of the Trustee and of all persons who may, with reasonable justification, be consulted or employed by or act for the Trustee in connection with any of the trusts, rights or duties hereof."   Counsel fees are obviously a proper item.   The failure to allow the trustee its counsel fees and costs was error.

The final decree is modified by providing that the case is to be remanded to the Superior Court for a determination of the trustee bank's expenses and costs, and as so modified, it is affirmed.

*So ordered.*